United States Court of Appeals,

Fifth Circuit.

No. 94-60008

Summary Calendar.

Beverly WOODSON, as Executrix of the Estate of Hayes Hudson, Deceased, Plaintiff-Appellant,

v.

SURGITEK, INC., Medical Engineering Corp., and Bristol-Myers Squibb Co., Defendants-Appellees.

July 19, 1995.

Appeals from the United States District Court for the Southern District of Texas.

Before SMITH, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Plaintiff appeals the district court's judgment dismissing the plaintiff's complaint with prejudice. The district court ordered the dismissal under its inherent power as a sanction for delays caused by the plaintiff. Finding that the district court did not abuse its discretion, we affirm.

I.

Unfortunately, to review the sanction of dismissal ultimately imposed by the district court, we must recount the long and tortured course this litigation has taken. On December 4, 1991, the plaintiff, Hayes Hudson,[1] through his attorney, Veronica Davis,

---

[1]Mr. Hudson died shortly before this appeal was perfected, and Beverly Woodson has been substituted in his place as executrix of his estate. However, the relevant proceedings in the district court occurred during Mr. Hudson's lifetime. Therefore, although this appeal is now being pursued on behalf of Mr. Hudson's estate, we refer to Mr. Hudson as the plaintiff.

filed suit in the 56th Judicial District Court of Galveston County, Texas. Hudson alleged that the defendants, Surgitek, Inc., Medical Engineering Corporation, and Bristol-Myers Squibb, were guilty of negligence and gross negligence in the manufacturing and marketing of penile prosthetic devices, two of which had been surgically implanted into plaintiff's body and failed. The implantation of these devices was done, apparently, to counteract impotence caused by the advancement of plaintiff's severe diabetes.

On January 15, 1992, the defendants removed the case to federal district court based on diversity of citizenship and it was assigned to Judge Lake of the Southern District of Texas, Houston Division. The case was ordered to proceed under the Cost and Delay Reduction Plan of the Civil Justice Reform Act providing for accelerated discovery. However, the record reflects a conspicuous lack of activity until June 3, 1992, when a joint discovery/management plan was filed. All parties admitted that the accelerated discovery had not occurred. The defendants' counsel claimed inadvertence while the plaintiff's counsel, Veronica Davis, claimed that her personal illness was the reason for noncompliance.

At a scheduling conference held June 10, 1992, Judge Lake granted the plaintiff's unopposed motion to transfer venue, and transferred this case to the Galveston Division of the same district. At the same time, Judge Lake entered a docket control order which, among other things, set December 18, 1992, as the deadline for the completion of discovery. In that status, the case was transferred to the docket of Judge Samuel B. Kent.

2

After the transfer of venue, the district court entered an order announcing that a scheduling conference would be held on November 5, 1992. Again, the record reflects a complete lack of activity prior to the scheduling conference. A new docket control order was entered, which provided, among other things, that plaintiff would designate his expert witnesses no later than December 18, 1992, that defendants would designate their expert witnesses no later than January 29, 1993, that discovery would be completed by March 5, 1993, and that trial would begin March 22, 1993. Naturally, these events did not come to pass as scheduled.

On January 5, 1993, plaintiff filed a pleading entitled "Request for a Jury Trial and Change of Trial Date," which alleged that plaintiff had suffered medical complications "believed to be the result of prosthetic fluid leaking into the body of the plaintiff," which required additional medical confirmation. Since the alleged leaking fluid was a new development, unknown at the time of the filing of the original complaint, and was possibly "critical to the instant case," plaintiff requested a continuance. On the same day of the filing of the request for continuance, the plaintiff filed a "Motion to Compel" challenging the defendants' asserted objections to her interrogatories and requests for production. This pleading, filed by Ms. Davis, also included allegations of defense counsel's bad faith; it was at this point, according to the district court, that the proceedings began to disintegrate.

The plaintiff's motions were referred to a magistrate judge

3

and were heard on January 25, 1993. Because of the plaintiff's apparently poor medical condition, the magistrate postponed ruling on the request for continuance until February 11, 1993. The parties were instructed to initiate a telephone conference on that date to update the Court on the plaintiff's medical status. The magistrate extended the defendants' expert witness designation deadline until February 8, 1993.

The magistrate granted in part and denied in part plaintiff's Motion to Compel and ordered answers to the interrogatories to be made by February 8, 1993, conditioned upon plaintiff's execution of a confidentiality agreement. Because of the nearing trial date, the magistrate scheduled a March 2, 1993 hearing to address, as necessary, any lingering discovery problems. Finally, because plaintiff's jury request was not timely, and was opposed by the defendants, the magistrate solicited a prompt motion from the plaintiff pursuant to Federal Rule of Civil Procedure 39(b).

On January 26, 1993, the defendants filed an opposed motion for leave to amend their original answer to respond more specifically to the allegations of plaintiff's complaint and to clarify and expand the affirmative defenses they wished to assert. The magistrate granted defendants' motion, and the amended answer was filed that same day.

On February 5, 1993, the defendants filed a "Motion to Strike Plaintiff's Late Designated Experts or, in the alternative, to Compel Production of Experts' Reports." The motion also contained a request for continuance. The motion alleged that plaintiff's

4

expert witnesses were designated several days too late and, regardless, that no expert reports had been supplied. The docket control order specifically required that the designation of expert witnesses be accompanied by the contemporaneous tender of each expert's preliminary written report. The magistrate judge immediately attempted to schedule a hearing on the motion by telephone. However, plaintiff's counsel Davis was unavailable at that time and then failed to contact the Court, as ordered, by noon of that day in order to coordinate the hearing. In fact, Davis never contacted the magistrate by phone, electing instead to forward a written response by facsimile to the clerk on February 8, 1993.

The plaintiff's written response stated that expert reports had not been produced because none had been prepared, with the exception of the implantation and explantation reports of Dr. Michael Warren, the surgeon who performed those procedures. Plaintiff's counsel argued that plaintiff should not be required to produce a document that is not in existence. Ms. Davis apparently offered no explanation for the failure to have such reports prepared except that because the plaintiff was still undergoing treatment preparation of such reports would be premature.

The magistrate excused the tardy designation, but required written reports from plaintiff's identified experts, Drs. Warren and Rogers, to be provided no later that February 16, 1993, with the warning that failure to provide the reports would result in the non-complying expert being stricken. The defendants' expert

5

witness designation deadline was extended to March 5, 1993, and discovery was extended to March 17, 1993. The defendants' request for a continuance was denied, but the due date for the joint pretrial order and the date of the pretrial conference were extended. Both parties' requests for sanctions were denied.

On February 9, 1993, the plaintiff filed a "Motion for Protective Order/Motion to Quash Taking of Depositions," complaining that the depositions of Drs. Warren and Rogers and others were scheduled without reasonable notice. The motion also alleged that the plaintiff, health permitting, intended to have Dr. Warren remove the penile device still in plaintiff's body prior to trial and that the defendants had withheld from production the first penile device thereby frustrating plaintiff's ability to determine the cause of his medical problems. Plaintiff's counsel contended that these two problems needed to be solved before the doctors' depositions would be completely meaningful. The motion also challenged the defendants' attempt to take Davis' deposition on the issue of attorneys' fees.

The defendants filed a response to plaintiff's motions the same day. The defendants did not object to the postponement of the scheduled depositions, but alleged that Davis had rebuffed all efforts by defense counsel to confer prior to the filing of the motion regarding alternate mutually convenient depositions dates. The defendants attached as an exhibit to their response a letter from defense counsel to Ms. Davis dated February 8, confirming that the depositions were cancelled and in the process of being

6

rescheduled.

The magistrate held a telephone conference on plaintiff's motion to quash on February 10, 1993. The magistrate quashed the doctors' depositions, subject to same being rescheduled prior to March 5, 1993. The magistrate also quashed the deposition of Davis in favor of submission of a detailed report of her attorney's fees by March 12, 1993. In addition, the magistrate ordered the defendants to produce the first prosthetic device.

On February 16, 1993, the plaintiff tendered an expert report from Dr. Warren. The magistrate held a telephone conference the same day on the defendants' claims that the tendered report was not sufficient. The magistrate ordered that the report be supplemented by the following day. The supplemental report was not provided, however, until February 23, 1993. On February 23, the defendants' moved to strike the plaintiff's designation of Dr. Warren as an expert witness because of fatal deficiencies in his reports.[2] The plaintiff's designation of Dr. Rogers as an expert had already been stricken because of plaintiff's failure to provide the required expert witness report. Noting that an order striking Dr. Warren would leave the plaintiff without any expert witness for trial, the magistrate denied the defendants' motion.

---

[2]The defendants contended that the reports, even as supplemented, failed to contain any opinion of Dr. Warren concerning the ultimate issues in the case: whether the devices were defectively designed or manufactured, whether the defendants were negligent, whether the defendants failed to warn plaintiff of any matters relating to the devices, or why the devices had failed. In its order dismissing the plaintiff's claims, the district court noted that it had reviewed the reports and agreed with the defendants' assessment.

On February 25, 1993, the magistrate again held a telephone conference on the issue of depositions. The defendants had noticed the depositions of the plaintiff and Dr. Warren on February 3, 1993, to be taken March 2 and March 3, respectively. The magistrate ordered that the plaintiff appear for his deposition on March 2. This order apparently not being satisfactory to the plaintiff, plaintiff's counsel, Ms. Davis, filed a "Motion for Protective Order/Motion to Quash Taking of Depositions/Objections to Order of Magistrate" on March 1, 1993. The defendants filed a response the same day.

Davis alleged that on February 23 (twenty days after the depositions were noticed) she discussed possible dates for the depositions and advised counsel of a personal doctor's appointment that she might not be able to reschedule. She also stated that she was not sure that plaintiff's health would permit the taking of his deposition although he had recently been discharged from the hospital. Additionally, Davis complained that during the telephone conference of February 25, defense counsel had misrepresented facts and failed to permit her sufficient time to present her argument. The defendants challenged all of Davis' allegations.

Thus, the magistrate held another telephone conference on March 1, 1993 on the matter of depositions. The magistrate ordered plaintiff's deposition to commence on March 3, 1993 at 8:00 a.m., in Galveston, Texas, at a mutually acceptable site or at the courthouse. The plaintiff's deposition was to recess to permit Dr. Warren's deposition to be taken beginning at 1:00 p.m. the same

8

day.  The plaintiff's deposition was to continue thereafter until completed.  The magistrate cautioned that plaintiff's nonappearance would be excused only if his treating physician would confirm by affidavit that his travel to Galveston was life-threatening.

On the morning of March 3, three attorneys representing the various defendants appeared at the federal courthouse in Galveston for plaintiff's deposition, having traveled from Dallas, San Antonio, and New York, only to find that neither plaintiff nor plaintiff's counsel was going to appear.  Davis had notified the magistrate's office that the plaintiff was not going to appear, but gave no such notice to defense counsel.  Davis had not provided an affidavit from plaintiff's doctor.  The magistrate, in the presence of defense counsel, promptly initiated another telephone conference with Davis.  The magistrate ordered Davis to submit an affidavit from plaintiff's doctor to verify that the plaintiff was unable to attend his deposition for medical reasons.  The magistrate cautioned that failure to provide such an affidavit by the following day would result in a recommendation that the plaintiff's complaint be stricken.  The deposition of Dr. Warren was ordered to proceed in Davis' absence.

Shortly after the telephone conference, however, word was received that Ms. Davis had contacted Dr. Warren and advised him that he might be joined as a defendant in this litigation.  Given that Dr. Warren, plaintiff's only remaining expert witness, might be joined as a party-defendant, the magistrate canceled his deposition pending resolution of the proposed joinder.  The

magistrate informed the parties that if he received the doctor's affidavit, he would postpone the trial date and enter a stay of the litigation to monitor the plaintiff's medical condition and to allow for the sixty-day notice period required by the Texas Medical Liability and Insurance Improvement Act.[3] The magistrate also gave the defendants until March 15, 1993 to file a motion for sanctions to recoup the costs and attorneys' fees attendant to their fruitless trip to Galveston.[4]

Late in the day on March 3, the magistrate received an affidavit from the plaintiff's doctor confirming plaintiff's inability to appear for his deposition. The next day, the magistrate entered an order staying the litigation until June 4, 1993, at which time a scheduling conference was to be conducted. The order specifically advised that the sixty-day notice period would not be considered tolled by the stay, and that the questions of sanctions and settlement might be addressed during the stay.

At the time the stay was ordered, there remained pending motions filed by the plaintiff regarding discovery and joinder, as well as plaintiff's objections to the magistrate's order allowing the defendants to amend their answer. On March 15, 1993, defendants filed a motion for sanctions, seeking $2,617.40 as costs, expenses, and fees attendant to the Galveston trip. On the same day, although the magistrate had not imposed sanctions at that

_____

[3]Texas Revised Civil Statutes, Art. 4590i § 4.01.

[4]The sanctions, if any, were to be imposed on Davis personally, pursuant to 28 U.S.C. § 1927.

10

time, the plaintiff filed "Plaintiff's Objections to Magistrate's Order for Sanctions and Staying Further Litigation," which rehashed Davis' complaints about defense counsel and asked for the imposition of sanctions.

On April 15, 1993, the magistrate sent a memorandum to the district court coordinator suggesting that a settlement conference might be in order because of the incredible level to which this litigation had deteriorated.[5] Thus, at the magistrate's urging,

---

[5]The memo was not intended to be a part of the file, but it was placed on the correspondence side of the clerk's file and all parties became aware of its existence. Because of the nature of its ultimate disposition, the district court made all relevant correspondence a part of the record. The memo read as follows:

> DATE: April 15, 1993
>
> TO:    Louise Johnson
>
> FROM: John R. Froeschner
>
> RE:    *Hudson v. Surgitek,* C.A. No. G-92-284
>
> In early March I entered an Order staying any proceedings in this cause by virtue of the Plaintiff's poor health; by doctor's affidavit submitted to me he was found physically unable to appear for deposition or to appear for trial. My observations, for what they are worth, lead me to believe that Plaintiff's counsel is not financially able to pursue this claim against the Defendant and, as a result, the case, which appears to have substantial merit, has deteriorated to the point where a disservice might be suffered by the Plaintiff when the stay is lifted. I also believe that the Defendants would very much like to settle this matter but have not been able to get Plaintiff's counsel to engage in any reasonable settlement discussions.
>
> I believe that if the cause were set for a settlement conference sometime in May or early June (I have a scheduling conference set for June 4 at 10:00 a.m.) that Judge Kent could get the matter settled which is probably in the best interest of everyone

11

the district court scheduled a settlement conference for June 3, 1993. The magistrate rescheduled the post-stay scheduling conference for June 3, 1993, commencing immediately after the settlement conference, if necessary.

On June 3, 1993, the attorneys attended the settlement conference and through admittedly aggressive negotiations, with the district judge participating, agreed to settle the case for $85,000.00.[6] The next day, the district court entered an order administratively closing the case without prejudice to any party to re-open the matter if the settlement could not be perfected. Pending final settlement, both parties' requests for sanctions were deferred. As it turned out, however, this matter was far from over.

On July 2, 1993, the defendants filed a motion to enforce the settlement agreement, alleging that the plaintiff, through his

---

involved in this litigation.

My stay order specifically notified the parties that I will deal with possible sanctions against Plaintiff's counsel for her failure to notify defense counsel not to appear in Galveston for the Court-ordered deposition of her client and further that the District Court might schedule a settlement conference during the period of the stay. The sanction request is ripe for consideration, but if Judge Kent elects to have a settlement conference, I would prefer to leave that matter unresolved until the completion of the settlement conference. I would be happy to do the settlement conference but I don't think I would be able to get the matter resolved; I think Judge Kent can.

I you have any questions, please call, and please keep me advised.

[6]The settlement negotiations held June 3 were conducted off the record.

12

counsel Davis, refused to settle any claim he might have relating to silicone poisoning unless the defendants would pay $210,000.00. The defendants sought specific performance of the settlement agreement and attorneys' fees attendant to the motion. On the same day, the district court entered an order granting the defendants' motion to enforce the settlement.

On July 6, 1993, Davis filed the Plaintiff's "Motion to Enforce Settlement Agreement as Verbalized or Motion to Re-Open Case," alleging that she had expressly reserved the right to pursue the silicone cause of action. She asked the district court to force the defendants to pay the $85,000.00 while preserving the plaintiff's right to pursue the silicone claim or, in the alternative, to re-open the case. The district court entered another order, this time on plaintiff's motion, to enforce the settlement, and ordering execution of a "full and final release ... releasing *all* claims Plaintiff has arising from his allegedly failed penile implant."

On July 23, 1993, the defendants filed their "First Amended Motion to Enforce Settlement Agreement" because, despite the district court's orders of July 2 and July 6, Ms. Davis still refused to execute any release that failed to preserve plaintiff's right to pursue a future cause of action for silicone poisoning. This motion prompted the July 26 filing of "Plaintiff's Second Motion to Enforce Settlement Agreement as Verbalized or Motion to Re-Open Case," which again argued that the silicone poisoning claim had been specifically exempted from the settlement. The plaintiff

13

seized upon the language in the district court's July 2 order that the settlement addressed only claims "raised in this law suit" and its July 6 order that plaintiff was settling "all claims Plaintiff *has,*" which Davis argued did not include the long-ago disclosed but not yet affirmatively pleaded cause of action for silicone poisoning. Davis also sought sanctions from defense counsel in the amount of $100,000.00 and attorneys' fees of $2,000.00 for the defendants' recalcitrant behavior in refusing to honor the settlement and the district court's orders enforcing same.

The district court set a hearing for August 21, 1993 to resolve this dispute. Obviously, however, the hearing date scheduled was not soon enough to satisfy Ms. Davis. On August 4, 1993, she filed "Plaintiff's Second Motion for Sanctions/Motion to Enter Orders for Settlement and Release."[7] The motion, insofar as it dealt with sanctions, complained that the defendants' "subterfuge, recalcitrance," and dishonesty in the discovery ordered by the Magistrate Judge on January 25, 1993, had denied plaintiff proper discovery and inflamed the district court, in some

---

[7]This motion was accompanied by a letter to the district court's coordinator dated August 2, 1993. Alleging, initially, the defendant's underhanded tactics in procuring the setting of the August 21, 1993 hearing date, the body of the letter concluded

> [t]he date of August 21, 1993, is wholly unacceptable. My client is an extremely ill man. This is one of the reasons he chose to enter into settlement negotiations. His health is indeed to (sic) precarious to wait that long. If Judge Kent can not (sic) entertain the Motions before this Court, I am requesting that he appoint a Visiting Judge or transfer this cause to another area of venue, preferably Houston or Dallas so that this matter might be ruled on immediately.

14

unexplained way, so as to "devalue Plaintiff's case" to a value of $85,000.00. Davis sought an award of costs and attorneys' fees and an order striking the defendants' pleadings.

On August 13, 1993, the defendants responded by reminding the district court that the plaintiff had only one remaining expert, Dr. Warren, who not only was unable to give an opinion as to the defendants' liability on any ultimate issue in the case, but also, if the case were re-opened, was going to be sued by the plaintiff, presumably for some form of malpractice. The defendants argued that despite the "summary judgment" posture of the case, they settled the matter in its entirety for $85,000.00. Any post-settlement attempt to "carve out" the silicone poisoning cause of action, they argued, was unfounded and defied common sense. The defendants took issue with Ms. Davis' harangue and asked the district court to order plaintiff to execute a release of all claims, including any cause of action for silicone poisoning.

On August 20, 1993, the district court heard the motions relating to enforcement of the settlement.[8] It became apparent at the hearing, and the district court specifically found, that there had not been a meeting of the minds regarding the scope of the settlement negotiated June 3.[9] In an effort to salvage the

---

[8]This hearing was recorded and transcribed in its entirety, and is part of the record on appeal.

[9]However, in its opinion of January 5, 1994, the district court said "There is no doubt in this Court's mind that the prospect of a silicone poisoning cause of action surviving a settlement agreement was **never** discussed at the settlement conference on June 3, 1993." Dist.Ct.Op. at 25 (Civ. No. G-92-284, January 5, 1994).

15

settlement, the district court, with the agreement of all parties, ordered that the plaintiff undergo medical testing to determine the presence, if any, of silicone in his body. The parties agreed, on the record, that if the testing were negative the settlement would be enforced and the silicone poisoning cause of action released. On the other hand, if the test results were positive, the settlement would be set aside, the case would be reinstated, and the plaintiff would be permitted to amend his complaint and proceed to trial before a different district judge.[10]

Still hoping to facilitate settlement in reasonably prompt fashion, the district court asked the parties to accomplish the agreed upon medical testing "cooperatively and pleasantly." The specimen retrieval was to take place within thirty days, and the testing was to be completed within thirty days of the sample retrieval. The parties were asked to agree, if possible, on a pathologist to perform the testing or, absent such agreement, to submit two names each to the district court from which the court would choose. The record clearly indicates that the parties agreed to these terms voluntarily.

The district court noted the "vituperative pleadings that [had] been rifling back and forth," and asked the parties to initiate a conference call regarding any problems that might arise, rather than filing any pleadings and attacking one another therein.

---

[10]Judge Kent indicated at the hearing that he would grant a motion for recusal if this matter were to proceed to trial because of the intimate role the court had played in the settlement negotiations and evaluation of plaintiff's case.

16

Despite the district court's request, on August 31, 1993, Davis sent a letter to the district court asking the court, once again, to enforce the plaintiff's version of the settlement agreement reserving to plaintiff and/or his heirs the right to pursue a subsequent action for silicone poisoning and/or wrongful death in connection therewith. The letter also claimed a fruitless attempt to locate a pathologist to perform the necessary testing. According to the letter, the court's proposal was unworkable because the necessary tissue retrieval would require extensive surgical procedures prohibited by plaintiff's current medical condition.[11] Davis' letter also made another attempt to convince the district court that plaintiff had "been forced to be subjected to this position due to the recalcitrance and/or refusal of the Defendants in entering into the settlement as agreed on the date of June 03, 1993."

Naturally, Davis' letter prompted a response from the defendants. By letter dated September 3, 1993, the defendants confirmed that the proper testing would require a tissue biopsy but took issue with the claimed inability to locate a pathologist willing to perform the procedure. The defendants asserted that a Dr. Williams, the Chief of Pathology at St. Joseph's Hospital in Houston, Texas, was willing to perform the testing and that they had left several unanswered messages at Davis' office in an attempt to confer with her in this regard.

_____

[11]The district court later learned that Dr. Carl Davis, plaintiff's attending surgeon, was not informed of the court's order for specimen retrieval until October 18, 1993.

A written order memorializing the contingent settlement agreement reached at the August 20 hearing was signed September 10 and entered September 13, 1993. However, still undaunted by the district court's order requiring negative results of the silicone testing as a condition to enforcing the $85,000.00 settlement, and the admonishment against filing further interim pleadings, Davis filed a "Motion for Contempt and Brief in Support Thereof and Motion for Sanctions" on September 23, 1993. Davis again argued that she had expressly reserved the right to pursue the silicone poisoning cause of action, and condemned the defendants' "wrongful" refusal to honor the $85,000.00 "partial" settlement. Plaintiff's counsel went so far as to claim that there were no disputed facts regarding the settlement agreement," and asked the district court to find the defendants and their counsel to be in contempt, to assess damages against the defendants and their counsel in the amount of $250,000.00, and to award plaintiff attorney's fees in the amount of $14,553.00. Contemporaneously, Davis also filed a "Motion to Lift Stay of Discovery and Motion to Compel Discovery," re-urging complaints previously made regarding discovery. This motion, while briefly reiterating allegations of defense counsel's dilatory tactics, also suggested that the "clear failure" of the district court to correctly apply the law of discovery was an abuse of discretion subject to mandamus.

On September 24, 1993, in response to the motions filed by Davis the day before, the district court set a status conference for October 5, 1993, and sent written notice of the conference to

18

all parties. The district court's attempts to set these proceedings back on track obviously did not meet with plaintiff's approval, as Davis immediately filed a petition for writ of mandamus with this Court. After reciting a litany of "abuses" she and the plaintiff had been subjected to by the district court and magistrate judge, Davis asked this Court to enforce the $85,000.00 partial settlement and to vacate all orders relating to silicone testing. In the alternative, Davis asked this Court to mandate that the district court lift the stay of discovery and transfer the matter to Houston because of the extreme prejudice shown by the judges in the Galveston division. Davis also asked that the litigation be stayed pending this Court's ruling on plaintiff's petition.

On September 30, 1993, Davis sent the district court a copy of the petition, advised the court that she was seeking a stay of the litigation, and announced that she would thus not appear at the status conference on October 5, 1993. Upon learning of plaintiff's petition to this Court, and to allow time for proper consideration, the district court canceled the conference scheduled for October 5.

On October 5, this Court denied plaintiff's petition for writ of mandamus. Upon receipt of this Court's ruling, the district court rescheduled the status conference for November 2, 1993, and sent notice to counsel. It was clear to the district court that "the case needed to be re-opened and a docket control order established to provide for its disposition."[12] Unfortunately, the

_____

[12]Dist.Ct.Op. at 24.

19

plaintiff seemed determined not to give the district court any such opportunity.

Not being satisfied with this Court's initial determination that an extraordinary writ was unwarranted, Davis sought a rehearing *en banc* of plaintiff's petition. On November 1, 1993, Davis again asked this Court for a stay of proceedings in the district court pending a ruling on plaintiff's suggestion for rehearing *en banc.* Davis notified the district court of her filings by facsimile transmission on the same day.[13]

This Court denied plaintiff's motion to stay proceedings on

_____

[13]Ms. Davis' letter to the clerk of this Court dated November 1, 1993, went, in relevant part, as follows:

> On or about October 22, 1993, I filed a Suggestion for Rehearing in the above referenced cause. In so doing, I requested a stay of all matters pending in the United States District Court pending a ruling on the Suggestion for Rehearing. A Scheduling conference is scheduled for tomorrow, November 02, 1993. Of course, the scheduling of the hearing conference indicates that the trial judge will not uphold the orders entered in connection with the settlement which is the object of the Writ of Mandamus and the Request for Rehearing.
>
> Since the Court of Appeals has not yet made a ruling on the matters I have filed which are pending before it, I am requesting the granting of the stay of litigation in this matter until a ruling from the Court of Appeals has been obtained.
>
> I regret the lateness with which this is being forwarded to you. Unfortunately, I spent the morning at the doctor's office being examined, discussing test results and being prepared for preoperative procedures. Please be advised that I will be in Houston on Tuesday, November 02, 1993, being subjected to preoperative procedures and will be having surgery on November 03, 1993. You may reach me at (409) 345-2092. A recorder will be on if I am not available to answer the telephone.

the same day, November 1.  Relying on her suggestion for rehearing *en banc,* a personal medical appointment, and an unresolved telephone request with the district clerk's office, plaintiff's counsel failed to appear at the status conference on November 2, 1993.  Ms. Davis had not, at that time, identified the nature of her alleged medical appointment or explained why it could not be rescheduled.  Given the history of delays and scheduling problems in this litigation,[14] the district court quite understandably viewed this excuse with skepticism.  Under the circumstances, the district court viewed Davis' failure to appear as "yet another obstruction to the progress of this plagued and hostile litigation."[15]  Thus, in the exercise of its inherent powers to control the conduct of lawyers practicing before it, the district court promptly dismissed the plaintiff's cause of action with prejudice.

On November 23, 1993, the plaintiff filed a "Motion for Rehearing/Motion for New Trial/Motion to Recuse."  Finally, with this motion, Davis submitted proof of her medical treatment on November 2.  Davis contended, however, that she did not request a continuance of the status conference because (1) there was no action before the district court at the time because this Court had not yet ruled on her suggestion for rehearing of plaintiff's

---

[14]The district court noted that it was not "the first time Davis' alleged personal medical problems had impeded the progress of this case;  it had kept her from engaging in the accelerated discovery during the five months immediately following the removal of this case to federal court and it had caused problems scheduling depositions."  Dist.Ct.Op. at 24.

[15]Dist.Ct.Op. at 25.

petition for writ of mandamus, and (2) counsel was totally prohibited from filing any further pleadings in this matter by order of the district court. Davis also argued that the district court had failed to respond to her telephone inquiries of the clerk's office regarding whether she was expected to appear at the status conference. In addition, Davis argued that the actions of Judge Kent were the result of bias and prejudice, and thus that Judge Kent should recuse himself.[16]

Also on November 24, the district court received a copy of a letter Ms. Davis sent to one of the defendants' attorneys, which complained of a "complete subversion of the judicial process." Stating that she found defense counsel's actions to be "equally culpable as the Court['s]," she accused her adversaries of serious acts of misconduct, and enclosed a draft of a letter to the State Bar of Texas Disciplinary Committee recommending their disbarment. The letter leveled numerous allegations of misconduct, including an allegation that some special relationship existed between defense counsel and the district court. On the same day, the district court received a letter from Dr. Carl Davis, plaintiff's attending surgeon, which indicated that he had not been informed of the court's order for specimen retrieval until October 18, 1993. By tragic coincidence, November 24 was also the day that the plaintiff, Hayes Hudson, died at Methodist Hospital in Houston,

---

[16]We note that Judge Kent had already indicated on the record his willingness, if this matter were reinstated, to recuse himself because of his intimate role in settlement negotiations. Ms. Davis' claims of bias and prejudice were thus certainly gratuitous.

22

Texas.

On January 4, 1994, the district court denied plaintiff's motions for rehearing and new trial, issued an opinion and order, and entered final judgment dismissing plaintiff's cause of action with prejudice. This appeal followed.

## II.

The appellant, the personal representative of Hudson's Estate, argues that the district court abused its discretion when it dismissed Hudson's cause of action under its inherent authority. The appellant also argues that the district court erred by dismissing Hudson's claims while a Suggestion for Rehearing *En Banc* on plaintiff's Petition for Writ of Mandamus was pending because if the petition had been granted the claims before the district court would have been settled. Appellant contends that the petition and suggestion for rehearing divested the district court of jurisdiction and thus it was without power to enter an order of dismissal. Finally, appellant argues that the district court erred in refusing to enforce the plaintiff's version of the purported settlement.

The Defendants/Appellees contend that the dismissal with prejudice was within the district court's inherent power and was appropriate under the circumstances. The Defendants also argue that the district court was not without jurisdiction to dismiss plaintiff's claims, and that the district court's finding that there was no meeting of the minds as a result of the June 3 settlement conference was not clearly erroneous. We agree.

23

III.

A. JURISDICTION

Appellant's contention that the district court was deprived of jurisdiction by the petition for writ of mandamus and request for stay is without merit. As a general rule, a perfected appeal from a final judgment or reviewable order of a district court does vest jurisdiction in the appellate court and terminates the jurisdiction of the district court.[17] This rule does not apply to petitions for writ of mandamus.

Mandamus petitions request an extraordinary remedy that is only appropriate in exceptional circumstances. Moreover, because such requests are only granted in exceptional circumstances, the Federal Rules of Civil Procedure do not provide for an automatic stay of district court proceedings while a petition for writ of mandamus is pending. If the district court or the court of appeals finds it appropriate to stay proceedings while a petition for mandamus relief is pending, such a stay may be granted in the court's discretion. However, absent such a stay, the jurisdiction of the district court is not interrupted. In the present case, no stay was granted. Thus, the district court had jurisdiction and retained the authority to enter the order of dismissal.

B. REFUSAL TO ENFORCE SETTLEMENT

The appellant's contention that the district court erred in refusing to enforce the plaintiff's version of the settlement

---

[17]*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401-02, 74 L.Ed.2d 225 (1982).

24

pursuant to its July 2 and July 6, 1993 orders is also without merit. It is apparent from the record that following the June 3, 1993 settlement conference, the district court believed that agreement had been reached to settle *all* claims arising from the allegedly defective penile implants. Despite the appellant's creative attempts to construe the court's orders to the contrary, it is clear that it was with this intention that the district court's orders of July 2 and July 6 were entered. In its opinion, the district court stated unequivocally that it did not recall the express reservation of the silicone poisoning claim plaintiff's counsel claims to have made on June 3. It is clear, however, that the court accepted plaintiff's counsel's statements regarding her understanding of the June 3 settlement and found that there had not been a meeting of the minds on that date. Under the circumstances, we cannot say that this finding is clearly erroneous.

In any event, the July 2 and July 6 orders were superseded by the district court's order following the August 20, 1993 hearing. This order reflected the agreement of all parties, through counsel, that settlement of all of plaintiff's claims would be enforced only if testing for silicone poisoning returned negative results. The only alternative provided in the order was re-opening the case with an opportunity for plaintiff to amend his complaint. There was no provision for enforcement of a partial settlement like that desired by the appellant. Thus, appellant's contention that a partial settlement should now be enforced by this court is without basis.

C. DISMISSAL UNDER THE COURT'S INHERENT POWER

25

Following plaintiff's counsel's failure to appear at the status conference on November 2, 1993, the district court dismissed the plaintiff's claims under its inherent power to control the conduct of attorneys practicing before it. Based primarily on plaintiff's continued and extraordinary efforts to enforce the purported settlement of June 3, and plaintiff's apparent refusal to comply with the contingent settlement agreed to on August 20, the district court found that the clear record of delay and contumacious conduct justified the dismissal of the complaint.

The federal courts are vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[18] This power is necessarily incident to the judicial power granted under Article III of the Constitution.[19] This includes the power of the court to control its docket by dismissing a case as a sanction for a party's failure to obey court orders.[20] However, when these inherent powers are invoked, they must be exercised with "restraint and discretion."[21] Dismissing a case with prejudice is a harsh sanction, but we will

[18]*Link v. Wabash R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

[19]*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994).

[20]*In re United Markets International, Inc.,* 24 F.3d 650, 654 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 356, 130 L.Ed.2d 310 (1994).

[21]*Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991); *Natural Gas Pipeline,* 2 F.3d at 1406 (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)).

uphold an involuntary dismissal unless the district court has abused its discretion.[22] This Court has held that such sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." We hold that plaintiff's actions meet this standard.[23]

---

[22]*Chambers,* 501 U.S. at 54-56, 111 S.Ct. at 2138; *United Markets,* 24 F.3d at 654.

[23]*United Markets,* 24 F.3d at 654 (quoting *Pressey v. Patterson,* 898 F.2d 1018, 1021 (5th Cir.1990)). The district court implicitly found "a clear record of delay or contumacious conduct" that justified dismissal. In a long line of cases, this Court has held that the sanction of dismissal should only be imposed in the face of a "clear record of delay or contumacious conduct" if "the court first finds that a lesser sanction would not have served the interests of justice." *Securities and Exchange Comm'n v. First Houston Capital Resources Fund, Inc.,* 979 F.2d 380, 382 (5th Cir.1992); *Berry v. CIGNA/RSI-CIGNA,* 975 F.2d 1188, 1191 (5th Cir.1992); *McNeal v. Papasan,* 842 F.2d 787, 790 (5th Cir.1988); *Price v. McGlathery,* 792 F.2d 472, 474 (5th Cir.1986); *Callip v. Harris County Child Welfare Dept.,* 757 F.2d 1513, 1519 (5th Cir.1985); *Rogers v. Kroger Co.,* 669 F.2d 317, 320 (5th Cir.1982); *Veazey v. Young's Yacht Sale and Service, Inc.,* 644 F.2d 475, 477 (5th Cir. Unit A 1981). However, each of these cases involved a review of sanctions imposed under the Federal Rules of Civil Procedure.

By contrast, some of this Court's opinions involving review of sanctions imposed under the court's inherent power have held the sanction of dismissal should be limited to instances of "bad faith or willful abuse of the judicial process." *In re United Markets International, Inc.,* 24 F.3d 650, 654 (5th Cir.1994); *Pressey v. Patterson,* 898 F.2d 1018, 1021 (5th Cir.1990). Although this Court has never expressly addressed the distinction between these two standards, it has at least stated that "[t]he trial court's discretion to impose sanctions under its inherent power is even more limited." *Pressey,* 898 F.2d at 1021.

Since the appellant does not argue that the district court applied the wrong standard, we will not address the substantive difference between these distinct lines of authority. Instead, we find that any error in this regard would be harmless in the present case since the more stringent standard has been met.

27

Although the district court recounted the entire history of this hostile litigation in its order of dismissal, we read the district court's opinion as relying primarily on plaintiff's counsel's conduct following the hearing held August 20, 1993. As discussed above, all parties agreed at this hearing that absent negative results of tests for silicone poisoning the settlement agreement would not be enforced. Yet, despite Ms. Davis' express agreement to the testing conditions, she filed another request to enforce a partial settlement.

Davis' letter to the court of August 31 claimed an inability to find a pathologist to perform the necessary tests and that the tests were prohibited by the plaintiff's medical condition. The record reflects, however, that defense counsel located qualified pathologists and that plaintiff's counsel was unavailable to discuss an agreeable selection. Furthermore, the record reflects that Davis did not inform plaintiff's attending surgeon of the court's order for testing until October 18, 1993.

The district court reaffirmed the contingent settlement agreement by order entered September 13, 1993. Yet, plaintiff's counsel filed a motion for contempt and sanctions on September 23, 1993, claiming, without any basis, that the defendants had wrongfully refused to enter a partial settlement pursuant to the "agreement" reached at the June 3 settlement conference. Moreover, when the district court attempted to put this litigation back on track by scheduling a status conference, plaintiff's counsel made the same frivolous arguments regarding a partial settlement to this

28

Court by Petition for Writ of Mandamus. Absent any legal basis for such extraordinary relief in this case, the mandamus petition seems to have been intended merely to create additional procedural delay. These facts fully support a finding that the plaintiff was willfully and in bad faith refusing to comply with the court's August 20 and September 13, 1993 orders.

The appellant attempts to characterize the district court's dismissal as a sanction under Federal Rule of Civil Procedure 16 for failure of plaintiff's counsel to appear for the status conference on November 2, 1993. The district court's opinion is not so limited, however, and we need not decide whether that failure to appear alone would support the dismissal. The district court relied on the entire history of the litigation, including the previous delays occasioned by the plaintiff.[24]

We recognize that "[w]hen parties or their attorneys engage in bad faith conduct, a court should ordinarily rely on the Federal Rules as the basis for sanctions." *Natural Gas Pipeline,* 2 F.3d at 1410 (citing *Chambers,* 501 U.S. at 50-52, 111 S.Ct. at 2136). Indeed, it appears in this case that some of the conduct of plaintiff's counsel arguably provided the basis for sanctions under Rules 11, 16, and 37. However, given the entirety of the circumstances and the wide range of willful conduct observed by the district court, it was not error for the court to resort solely to

---

[24]The Supreme Court has held in a similar case that "failure to appear at a pretrial conference may, in the context of other evidence of delay, be considered by a District Court as justifying a dismissal with prejudice." *Link,* 370 U.S. at 635, 82 S.Ct. at 1391.

its inherent power.  In cases like this, "requiring a court first to apply rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the rules themselves."[25]

In addition, we recognize that dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim."[26]  Thus, we do not easily affirm a sanction of dismissal in a case, such as this one, where the sanctionable conduct was attributable to counsel rather than to the plaintiff directly.  There is no question, however, that a party is bound by the acts of his attorney.[27]  "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant[s].*"[28]

Considering the numerous obstacles and delays encountered in this case, we commend the district court for its patience.  Under

---

[25]*Chambers,* 501 U.S. at 51, 111 S.Ct. at 2136.

[26]*Callip,* 757 F.2d at 1519.

[27]*Link,* 370 U.S. at 632-34, 82 S.Ct. at 1390 ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.");  *Callip,* 757 F.2d at 1522.

[28]*Link,* 370 S.Ct. at 634 n. 10, 82 S.Ct. at 1390 n. 10.

30

the circumstances, we cannot say that the district court abused its discretion in dismissing plaintiff's claims with prejudice.

                              IV.

    For the foregoing reasons, the judgment of the district court dismissing plaintiff's claims with prejudice is AFFIRMED.

                    *    *    *    *    *    *


                    *    *    *    *    *    *


31