NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KI VENTURES, LLC,**
*Plaintiff-Appellant,*

**v.**

**FRY'S ELECTRONICS, INC., AND
CTA DIGITAL, INC.,**
*Defendants-Appellees.*

---

2014-1187

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:13-cv-01407, Judge Lynn N. Hughes.

---

Decided: August 28, 2014

---

WILLIAM P. RAMEY III, Ramey & Browning, PLLC, of Houston, Texas, argued for plaintiff-appellant.

PETER L. BERGER, Levisohn Berger LLP, of New York, New York, argued for defendants-appellees. With him on the brief was TOM ADOLPH, Adolph Locklar, of Houston, Texas.

---

Before PROST, *Chief Judge,* O'MALLEY, and HUGHES,
*Circuit Judges.*

O'MALLEY, *Circuit Judge.*

KI Ventures, LLC ("KI") brought suit against Fry's Electronics, Inc. and CTA Digital, Inc. (collectively, "CTA") in the United States District Court for the Southern District of Texas, alleging infringement of the claims in U.S. Patent No. 5,569,019 ("the '019 patent"). The district court dismissed the case with prejudice "[u]nder rule 11 of the Federal Rules of Civil Procedure and the inherent power of this court." Final Dismissal at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.* ("*Dismissal Order*"), No. 4:13-cv-1407 (S.D. Tex. Nov. 18, 2013), ECF No. 43. Because we conclude that the district court abused its discretion in dismissing this case with prejudice, we *vacate* the district court's dismissal and *remand* for further proceedings consistent with this opinion.

## I. BACKGROUND

On May 5, 2013, KI sued CTA, alleging infringement of certain claims in the '019 patent. The '019 patent, titled "Weapon Shaped Virtual Reality Character Controller," discloses a video game controller that is shaped like a gun. At the initial conference on August 12, 2013, the district court discussed the patentability and scope of the claims in the '019 patent, but carefully avoided the actual language of the claims.

> MR. RAMEY: He moves the controller to change the aspect, yes, Your Honor.
>
> THE COURT: He aims it.
>
> MR. RAMEY: Yes, Your Honor.
>
> THE COURT: Speak English.
>
> MR. RAMEY: Yes, Your Honor, he aims the gun.

* * *

THE COURT: My Ruger range rifle has a thumb control and a forefinger control. Take the pistol grip, you actually push the safety through with your thumb, pull the trigger. Actually a shotgun has that. The Ruger, you pull the safety. So that would violate this patent?

Transcript of Initial Conference at 9, 14, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Aug. 12, 2013). The district court might have wanted to avoid the language of the patent because it had not yet had a chance to review the patent. *Id.* at 2 ("Okay. Just want to make sure. What is it that KI has made that is patentable? I mean, I know you have a patent, but what is it? I didn't read the whole thing."). Despite not reviewing the whole patent, however, the district court still expressed doubts about the patentability of the '019 patent, focusing on the figures instead of the language of the patent.

THE COURT: Okay. But apparently CTA makes a sniper rifle, a submachine gun, an assault rifle and an assault rifle and sniper rifle. Well, so does the government. So does Remington and Ruger and Winchester and Colt. What's patentable about a toy gun that actually changes computer games?

* * *

MR. RAMEY: I'm not sure that the design on the front page of that patent is an accurate representation of the claims as they issued.

THE COURT: Why is it here then?

MR. RAMEY: We're not the ones that drafted the patent.

THE COURT: I'm sorry, you're stuck with whatever this thing is. That's what you own.

* * *

THE COURT: All right. Well, tell me where in here is a picture of what's patentable. Because they all look pretty similar to that. Is there no drawing of what's patentable?

*Id.* at 3–5.

At the end of the initial conference, the district court ordered KI to "do one of those infamous charts," explaining that "[w]hat I need is something that is clear, brief, and precise that means what KI thinks the claims it thinks are infringed mean." *Id.* at 17, 19. The district court issued a formal "Order on Claim Construction," ordering KI to "clearly and precisely construe its claims against [CTA]." Order on Claim Construction at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.* ("*Order on Claim Construction*"), No. 4:13-cv-1407 (S.D. Tex. Aug. 18, 2013), ECF No. 17.

KI complied with the court's order by serving its proposed claim constructions on CTA. CTA objected, complaining to the district court that "[t]here is no portion construing the claims against the five accused products." Status Report at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Aug. 28, 2013), ECF No. 18. On August 30, 2013, the district court sided with CTA by issuing an "Order on Confusion." The new order stated that "[KI] must give [CTA] an amended claim construction that explains *how their products infringe its patents*." Order on Confusion at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.* ("*Order on Confusion*"), No. 4:13-cv-1407 (S.D. Tex. Aug. 30, 2013), ECF No. 21 (emphasis added).

KI complied with the court's order by serving its preliminary infringement contentions on September 9, 2013. In its preliminary infringement contentions, KI provided annotated pictures of each accused device with numbered

arrows pointing to different parts.[1] For each claim limitation of the asserted claims, KI referenced a specific numbered arrow, thus indicating which part of the accused device it alleged met that limitation. CTA responded by arguing that KI's preliminary infringement contentions fail to adequately identify how CTA's products infringe the '019 patent.

The district court again sided with CTA, finding KI's preliminary infringement contentions deficient. On September 12, 2013, the district court issued an "Order on Infringement," which stated:

I. By noon on September 16, 2013, [KI] must give [CTA] amended infringement contentions with:

A. Exhibits that are complete and self-explanatorily marked.

B. A chart with text that precisely explains how each part of the product infringes the patent, not naked assertions like "Reference numeral # 1."

---

[1] While there is some debate over whether KI's September 9 infringement charts and drawings included arrows corresponding to the designation numbers, on this record, we must resolve that dispute in favor of KI. When CTA first sought sanctions in connection with those infringement contentions, it claimed KI had failed to tie its claims to the graphic depictions attached. It did so without a sworn statement attesting to that fact, however. In response, KI submitted an affidavit swearing to the authenticity of contentions, which did contain arrows and numbers corresponding to aspects of the allegedly infringing devices, and attached those contentions "to remove any doubt of what Plaintiff served on Defendants." Supplement to Preliminary Infringement Contentions at 2, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Sep. 16, 2013), ECF No. 27.

Order on Infringement at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.* ("*Order on Infringement*"), No. 4:13-cv-1407 (S.D. Tex. Sep. 12, 2013), ECF No. 26.

Although KI supplemented its preliminary infringement contentions on September 16, 2013, it did not provide a description beyond "Reference Numeral #[X]" for some claim limitations. KI also added "Plaintiff relies on the doctrine of equivalents for this element" to some claim limitations. *E.g.*, Joint Appendix ("J.A.") 221. CTA again insisted that KI's contentions were insufficient. The district court ordered a show cause hearing where "KI Ventures must appear and explain why its case should not be dismissed for refusing to obey the court's order—despite a second opportunity—and for generally not complying with the rudiments of presenting claims." Order to Show Cause at 1, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Oct. 10, 2013), ECF No. 32.

At the November 15, 2013 show cause hearing, the district court focused, not on the sufficiency of KI's infringement contentions, but on the validity of the '019 patent.

> THE COURT: Once somebody puts one control element on a firearm-looking thing, why isn't the rest of it obvious?
>
> MR. RAMEY: It is not how the patent law works, Your Honor.
>
> THE COURT: It is when what you do is obvious.
>
> MR. RAMEY: Well –
>
> THE COURT: Let me point out that there are –
>
> MR. RAMEY: We are having an invalidity argument at this point –

THE COURT: I can't because you and your client won't do what they are supposed to do. I'm just asking you some questions. If you don't want to answer them, just say, I prefer not to discuss this with Your Honor and I will not discuss it with you.

\* \* \*

THE COURT: My question is: What makes that an invention?

MR. RAMEY: Because it is useful –

THE COURT: The parts are useful. You can't – in patent use a light switch.

\* \* \*

THE COURT: My question was: Will yours move it with the buttons as well as with the joy stick?

MR. RAMEY: 100 percent.

THE COURT: That's not patentable.

MR. RAMEY: Your Honor, is that a statement or question?

THE COURT: It's a question.

MR. RAMEY: The combination of that in combination—

THE COURT: No. Answer my question.

MR. RAMEY: That is patentable. We have a patent. We know it is patentable.

THE COURT: Counsel, having two forms of controlling the aspect is not patentable.

Transcript of Show Cause Hearing at 30, 33, 43, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Aug. 12, 2013). As it did in the initial conference, the

district court refused to discuss the actual language of the '019 patent.

THE COURT: KI's patent is only on the location of the buttons on a gun-like piece of plastic.

MR. RAMEY: No, Your Honor. If you read the first –

THE COURT: Don't start quoting your patent.

\* \* \*

MR. RAMEY: We agree, Your Honor. There are two different methods of infringement of this gun.

THE COURT: Quit talking about infringement and tell me about how it works. I'm still trying to figure out how it works.

\* \* \*

THE COURT: Wait. Don't tell me what they did. Just tell me why it is novel. A trigger has one function, right?

MR. RAMEY: Not according to this patent –

THE COURT: The patent cannot make real life.

MR. RAMEY: But we have a CTA device that tracks the claims of the patent.

THE COURT: Counsel, talk about the real world for a minute.

\* \* \*

MR. RAMEY: When you put the first trigger and second trigger switch in tandem, one firing the weapon and one changing an aspect of the game, then you put a first multi-axis controller, this joystick, and a second multi-axis controller here.

> THE COURT: Don't say multi-axis controller. What does it do? It slides. Or is it a 360-degree switch?
>
> MR. RAMEY: This is a 360-degree switch, Your Honor.
>
> THE COURT: So it slides at 360 degrees.
>
> MR. RAMEY: This uses a joystick-type controller that moves at 360 degrees. These first –
>
> THE COURT: Slow down.
>
> MR. RAMEY: Adapted to change the position.
>
> THE COURT: Don't read the patent to me.
>
> * * *
>
> THE COURT: What is the novel of usefulness? [sic]
>
> MR. RAMEY: The combination of elements –
>
> THE COURT: Don't say that. Speak English. I am going to go home.

*Id*. at 13–14, 17, 39–40, 46.

For the show cause hearing, KI also submitted video exhibits to further clarify its infringement contentions. In each video, someone would read an asserted claim limitation, and another person would manipulate the part of the accused device that corresponded to that limitation. The district court, however, did not find the video helpful. *Id*. at 7 ("I did watch it. I did not find it particularly useful.").

At the end of the show cause hearing, the district court stated that it still had "no idea how [it] would rule on the merits." The court, however, dismissed the case "for recalcitrant non-compliance with Court orders." *Id*. at 52. The court expounded: "The case is dismissed for—I can't quote the rule—but both under Rule 11, second as

an inherent power of mine to—I know there's no Rule 11 motion but it will justify under Rule 11 my inherent power to manage a case and have its orders complied with." *Id*. at 53.

After the hearing, the district court dismissed the case with prejudice "[u]nder rule 11 of the Federal Rules of Civil Procedure and the inherent power of this court." *Dismissal Order* at 1. KI timely appealed this dismissal. We have jurisdiction under 28 U.S.C. 1295(a)(1) (2012).

## II. DISCUSSION

The district court stated that it was dismissing the case under Rule 11 and its inherent powers based on KI's "recalcitrant non-compliance with Court orders." Transcript of Show Cause Hearing at 52. Although Rule 11 sanctions may be appropriate if KI had submitted a document to the court for an improper purpose, Rule 11 is not used to sanction non-compliance with court orders. *See* Fed. R. Civ. P. 11(b). Because a court cannot impose Rule 11 sanctions for non-compliance with court orders, we find that it was an abuse of discretion for the district court to dismiss the case under Rule 11. While CTA contends dismissal under Rule 11 was appropriate because KI's failure to flesh out its infringement contentions in a manner that CTA found adequate is indicative of inadequate pre-suit investigation or that KI's allegations were not warranted by existing law or the relevant facts, the district court never made any such findings. Indeed, the district court neither ordered a show cause hearing on those grounds, discussed them at the hearing that was held, nor made a finding that Rule 11 was violated in those ways. CTA cannot justify Rule 11 sanctions now on grounds not supported by the trial record.

Turning to the court's inherent powers, we recognize that district courts have the inherent power to manage their own docket, including the power to dismiss a case. *See, e.g.*, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765

(1980) (acknowledging a court's inherent power to dismiss a case for failure to prosecute). Dismissing a case with prejudice is a harsh sanction, however, and the Fifth Circuit has held that such sanctions should be confined to "bad faith or willful abuse of the judicial process." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995). In this case, we conclude that the district court abused its discretion in dismissing KI's claims with prejudice at this stage in the litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (reviewing a district court's use of its inherent powers for abuse of discretion).

First, KI did not violate multiple court orders as the district court and CTA contend. *See* Transcript of Show Cause Hearing at 52 ("And I told it wasn't and you made another one and I told you it wasn't and you made another one and – *four orders*, counsel, to do a fundamental patent litigation problem. That is inexcusable." (emphasis added)). The court's first order, titled "Order on Claim Construction," can only reasonably be interpreted as an order to serve claim construction positions, not infringement contentions. *See Order on Claim Construction* at 1 ("By August 26, 2013, [KI] may clearly and precisely construe its claims against [CTA].").[2]

---

[2] The district court's statements during the initial conference do not imply otherwise. The district court explained that "[w]hat I need is something that is clear, brief, and precise that means *what KI thinks the claims it thinks are infringed mean.*" Transcript of Initial Conference at 19 (emphasis added). Furthermore, KI could not turn to the local patent rules for guidance because the district court made clear that this case would not follow those rules. *Id.* at 21 ("Separate rules for separate kind of cases suggest that all patent cases are alike. All patent cases are not alike. All contract cases are not alike. We're following my rules. I manage my cases.").

When the district court changed its order to require infringement contentions, KI timely served its preliminary contentions. KI's infringement contentions identified the parts of each accused device that KI alleged for each limitation by using pictures of the accused devices. Furthermore, at the show cause hearing, the supposed fourth order that addressed infringement contentions, KI did not have a fair chance to explain its infringement contentions because the district court refused to let KI refer to the language of the claims. *See Show Cause Hearing*, at 13–14, 17, 39–40, 46. Instead, the district court focused on the validity of the patent, which was not yet even at issue. *See id.* at 30, 33, 43.

The only order with which KI did not comply was the court's order to produce "[a] chart with text that precisely explains how each part of the product infringes the patent, not naked assertions like 'Reference numeral # 1.'" *Order on Infringement* at 1. And, KI's failure to follow the precise strictures of the court's order was only partial. Indeed, CTA does not even contend it did not understand KI's infringement contentions as of that point in time; it only contends that KI's chart was technically non-compliant with what the court ordered.[3] Although KI's failure to comply with the precise dictates of this order was improper—and unwise—it does not warrant the harsh penalty of dismissal with prejudice at this early

---

[3]    *See* Oral Argument at 19:45, *KI Ventures, LLC v. Fry's Elecs., Inc.*, 2014-1184, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1184.mp3 ("[Court:] Are you telling me that you can't read this chart and look at their narrative description of what they think their claim says and refer it to the numbers on the infringing items and make the leap between this is their claim this is where they think your device infringes? [CTA's Counsel:] Certainly we can.").

stage in the case. *See Woodson*, 57 F.3d at 1417 (explaining that dismissal is only proper in instances of "bad faith or willful abuse of the judicial process")

We also think that KI's conduct was not so "recalcitrant" as to warrant dismissal in this case. Although KI admittedly failed to comply with part of one court order, they continually tried to clarify their infringement contentions, through pictures, words, and even videos. For example, in preparation for the show cause hearing, KI produced videos that clearly mapped parts and uses of each accused device to specific claim limitations. The purpose of the preliminary infringement contentions is to inform CTA of KI's infringement positions. KI accomplished this purposed. Although KI did not use words to describe the part of the product it accuses for every limitation, it did provide annotated pictures with arrows that clearly point to the accused parts for every claim limitation. The videos produced for the show cause hearing even more clearly indicate the part and use of the accused device KI alleges for each limitation.

We realize that CTA thinks that KI's claim construction positions are incorrect and unsupported by the written description, making KI's infringement contentions baseless. But disagreement with KI's interpretation of its claims does not make KI's infringement contentions insufficient. Rather than challenging CTA's claim constructions on the merits or filing a motion for summary judgment, CTA implied that it did not understand KI's contentions. After KI served its contentions, which CTA admits now it understood, CTA filed with the court a "Response to Plaintiff's Infringement Contentions" in which it disingenuously stated that "Plaintiff is still hiding its infringement contentions." *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407, at 1 (S.D. Tex. Oct. 7, 2013), ECF No. 29. And CTA repeatedly told the court that KI had failed to comply with "three" court orders, even though the court titled its first order "Order on

*Claim Construction*" and CTA was, itself, unsure of whether that order required infringement contentions. *Id.*; Notice of Status Report Regarding an Order on Claim Construction, *KI Ventures, LLC v. Fry's Elecs., Inc.*, No. 4:13-cv-1407 (S.D. Tex. Aug. 28, 2013), ECF No. 18. CTA's disingenuous statements to the court regarding the sufficiency of KI's contentions and the number of orders likely confused the court, stimulating the premature dismissal of this case.

Because KI only disobeyed one court order, in part, and because KI's preliminary infringement contentions are sufficient to convey its position at this early stage in the litigation, the district court abused its discretion in using its inherent powers to dismiss this case. On remand, because CTA understands KI's literal infringement contentions, the district court should not require KI to further amend its contentions to continue with this case. The district court should proceed with claim construction, discovery, and normal motions practice. Although the district court need not follow the exact procedure laid out in the Rules of Practice for Patent Cases in the Southern District of Texas, using the well-known terminology would probably help avoid future "Order[s] on Confusion." *Order on Confusion* at 1. Furthermore, KI must be allowed to refer to the language of the patent—especially the claim language—in future filings and hearings on claim construction, infringement, and invalidity. For better or worse, these issues are entirely dependent on the language used in the patent, the claims, and the prosecution history, not pictures or "simple English." *Show Cause Hearing*, at 5.

We do agree with CTA and the district court, however, that KI's doctrine of equivalents ("DOE") contentions are currently insufficient. Although KI should be allowed to amend its DOE contentions during discovery, if the district court thinks it is proper, it may allow CTA to file an early motion for summary judgment on KI's DOE claims.

### III. CONCLUSION

For the foregoing reasons, we vacate the district court's order dismissing this case with prejudice, and remand the case for proceedings consistent with this opinion.

**VACATED AND REMANDED**