Cecil FUQUA, Individually and as Executor of the Estate of Wyvonne Fuqua, Deceased, et al.

v.

HORIZON/CMS HEALTHCARE CORPORATION f/k/a Horizon Healthcare Corporation, et al.

No. 4:98–CV–1087–Y.

United States District Court, N.D. Texas, Fort Worth Division.

Oct. 24, 2000.

H. Dustin Fillmore, III, Fillmore Law Office, Fort Worth, TX, for Plaintiffs.

R. Brent Coper, Cynthia S. Goosen, Diana Faust, Cooper & Scully, Dallas, TX, for Defendants.

*ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR SANCTIONS, DENYING DEFENDANT'S MOTIONS, RENDERING REMAINDER OF PLAINTIFFS' MOTIONS MOOT, AND REDUCING TRIAL–TIME ALLOCATIONS*

MEANS, District Judge.

Pending before the Court are several motions stemming from Plaintiffs' Notice of Intention to Take the Videotaped Oral Deposition of Horizon/CMS Healthcare Corporation served on May 26, 2000. After careful review of the pending motions, the briefs related thereto, the record in this cause, and the applicable law, the Court concludes that Plaintiffs' Second Motion for Sanctions should be granted, Defendant's motions

should be denied, and the remainder of Plaintiffs' motions should be rendered moot.

## I.  Factual Background

On May 26, Plaintiffs served defendant Horizon/CMS Healthcare Corporation, formerly known as Horizon Healthcare Corporation ("Horizon"), with a deposition notice scheduling Horizon's deposition for June 26. Horizon, the only remaining defendant in this action, operated the Heritage Western Hills nursing home ("Heritage") at which Wyvonne Fuqua resided prior to her death. The May 26 deposition notice contained a list of the topics to be covered during Horizon's deposition and also included a request for production, at the deposition, of various documents related to those topics.[1]

On June 22, counsel for the parties met to discuss their positions regarding the deposition notice but were apparently unable to reach a final agreement regarding the deposition and the related request for production of documents.[2] As a result, Horizon filed its pending Motion to Quash and for Protection and a separate Motion for Extension. The Motion to Quash and for Protection seeks an order from the Court prohibiting Plaintiffs from pursuing any portion of the deposition until after Horizon produces the documents responsive to the request for production that accompanied the deposition notice. The Motion for Extension seeks a thirty- to sixty-day extension of time for Horizon to respond to Plaintiffs' request for production. Both motions indicate that "the records of Horizon" are located in three different locations across the country and that "a review of over 15,000 plus boxes" of documents will be required to respond to Plaintiffs' request for production.[3]

---

1. The notice sought discovery regarding the topics mentioned in Plaintiffs' First Motion to Reopen Discovery filed on March 14, 2000. That motion sought the reopening of discovery in part because, five days before the discovery deadline, Horizon produced the 1996 operating budget for Heritage—a budget that Horizon had steadfastly denied having throughout the discovery period. The Court granted Plaintiffs' First Motion to Reopen Discovery on May 10, reopening discovery until August 31 on subjects reasonably related to the topics mentioned in Plaintiffs' motion.

2. During that meeting, Horizon's counsel revealed to Plaintiffs' counsel for the first time that "Horizon had thousands of boxes of documents and that the documents had been placed in boxes without proper labeling or indexing." Pls.' July 12, 2000 App. at 39, ¶ 8.

3. The affidavit of Hanlon Boyles, which was submitted in support of Horizon's Motion to Quash and for Protection, avers that these "15,000–plus boxes" belong to HealthSouth and Integrated Health Services ("IHS") rather than to Horizon. *See* Def.'s June 29, 2000 Mot. to Quash and for Protection, Ex. C at 2. Boyles further avers that

*See* Def.'s June 26, 2000 Mot. for Extension at 3; Def.'s June 29, 2000 Mot. to Quash and for Protection at 3.

Plaintiffs responded to Horizon's motions by filing, inter alia, their Second Motion for Sanctions. Plaintiffs' Second Motion for Sanctions seeks litigation-ending sanctions against Horizon for its abusive discovery tactics, including its failure to timely reveal the existence of the "15,000 plus boxes" of documents. Plaintiffs request that Horizon's pleadings be stricken, that a default judgment be entered against Horizon on all issues, including the issue of its liability for actual and punitive damages, and that Horizon be prevented from opposing Plaintiffs' presentation of their case regarding the amount of their damages. Plaintiffs also request recovery of their expenses, including attorneys' fees.

Plaintiffs have thoroughly recounted Horizon's abusive discovery tactics in the Appendix to their Second Motion for Sanctions. *See* Pls.' July 12, 2000 App. at 1–29. The Court has reviewed that chronology and finds that it accurately portrays the events that have led to this latest dispute and demonstrates Horizon's dilatory and evasive tactics throughout the discovery process in this case. For purposes of brevity and by way of example only, the Court will focus its analysis in this opinion on certain of Plaintiffs' discovery requests and Horizon's responses thereto and on the magistrate judge's discovery orders.

*Discovery Requests and Responses*

On April 6, 1999, Plaintiffs served Horizon with their First Request for Production of Documents. Section C of that request, which is entitled "Horizon Corporate Documents," requests the following documents:

(1) any documents discussing Medicaid reimbursement rates in relation to the quality of patient care at Horizon's nursing homes (request C.1);

(2) all reports and/or complaints regarding staffing issues at Heritage (requests C.2 through C.4); and

(3) Horizon's actual and proposed budgets for Heritage during the time Wyvonne Fuqua resided at Heritage (requests C.12 and C.13).

*See* Pls.' May 13, 1999 Mot. to Overrule Objections, Ex. A at 5–6. On September 8, 1999, plaintiff Suzanne Fuqua Ford served her First Set of Interrogatories, which inquire about the following matters:

(1) information relating to Horizon's Board of Directors (interrogatory number 3); and

(2) information regarding Horizon's compliance with applicable staffing regulations (interrogatory 5).

*See* Pls.' Oct. 25, 1999 Resp. to Def.'s Mot. for Prot. Order, Ex. 1 at 6–7, 9–10. On December 30, 1999, plaintiff Frank Barton Fuqua served his First Set of Requests for Production, which request the following documents:

(1) all documents, data compilations, and tangible things in the possession, custody, or control of Horizon that are relevant to disputed facts alleged in the pleadings (request number 3),

(2) all written communications by and between Heritage and Horizon that refer or relate to pressure sores, staffing, quality of care, and the accuracy or inaccuracy of medical records (request numbers 4 and 5), and

(3) all statements by personnel with Horizon, Heritage, and/or IHS relating to

---

"the documents within IHS's control are not within [Horizon's] custody or control and Plaintiffs should be required to go through IHS to get these documents." *Id.* at 3. Horizon sold Heritage to HealthSouth in November 1997, and HealthSouth sold Heritage to IHS in January 1998. Horizon's attempt, through Boyles's affidavit, to again suggest that it lacks access to and control over this evidence is remarkable in light of its past unsuccessful attempts to demonstrate a similar lack of access and control to evidence relevant to this suit that is within HealthSouth's

and IHS's possession. *See* Pls.' July 12, 2000 Resp. to Def.'s Mot. to Quash and for Protection at 16–18. It is clear to the Court that regardless of who may currently own or possess the documents, Horizon unquestionably has had the right to access and control them throughout the course of this litigation. *See id.* Indeed, Horizon's motions admit as much by referring to the "15,000 plus boxes" as "records of Horizon." Def.'s June 26, 2000 Mot. for Extension at 3; Def.'s June 29, 2000 Mot. to Quash and for Protection at 3.

Heritage and/or Wyvonne Fuqua (request number 6).

*See* Pls.' July 12, 2000 App. at 193. In general, Horizon responded to these requests by objecting to them, denying that it had any responsive documents, denying that it had sufficient knowledge or information to respond, denying that it had been able to locate all responsive documents "despite diligent efforts," (Pls.' July 12, 200 App. at 121), promising that it is "working to locate documents," (*Id.* at 120), or indicating that "all non-privileged documents that have been identified to date have been previously produced to Plaintiffs," (*Id.* at 211).

*Magistrate Judge's Related Orders*

On May 13, 1999, Plaintiffs filed a Motion to Overrule Objections and Motion to Compel regarding Plaintiffs' First Request for Production of Documents. In their response to the motion, Horizon withdrew a large portion of its objections, including its objections to requests C.12 and C.13 (requesting Horizon's actual and proposed budgets for Heritage while Wyvonne Fuqua was a resident). On September 14, the magistrate judge entered an order overruling Horizon's objections to Plaintiffs' First Request for Production of Documents and granting Plaintiffs' Motion to Compel.[4]

Nevertheless, as of October 8, Horizon had failed to provide Plaintiffs with any additional documents responsive to their First Request for Production of Documents. As a result, Plaintiffs filed a motion requesting, inter alia, that Horizon be ordered to comply with the magistrate judge's September 14 order. Approximately one week after this motion was filed, Horizon served supplemental responses to Plaintiffs' First Request for Production of Documents. Horizon's supplemental responses did not mention requests C.1 through C.4 (regarding staffing and the correlation between Medicaid reimbursement rates and quality of care), thus leaving as Horizon's final response to those requests its original response, which was that it "has no documents responsive to th[ese] request[s]." (Pls.' May 13, 1999 Mot. to Overrule Objec-

tions and Mot. to Compel, Ex. C at 6.) With respect to requests C.12 and C.13 (regarding Horizon's actual and proposed budget for Heritage), Horizon's supplemental response indicated that it "has located no documents responsive to th[ese][r]equest[s]." (Pls.' App. at 81.)

On November 1, the magistrate judge issued an order that, inter alia, granted Plaintiffs' Motion to Compel Compliance with the September 14 order. The magistrate judge's order also compelled Horizon to serve additional responses to plaintiff Suzanne Fuqua Ford's First Set of Interrogatories. On two subsequent occasions, the magistrate judge awarded monetary sanctions in Plaintiffs' favor in the total amount of $24,650.68 as a result of Horizon's position during discovery.

## II. Applicable Law

Plaintiffs' request for litigation-ending sanctions is premised on several of the Federal Rules of Civil Procedure and on the Court's inherent power. Because the Court has focused its analysis in this opinion on Horizon's evasive and incomplete responses to certain of Plaintiffs' discovery requests and its failure to abide by the magistrate judge's discovery orders compelling responses to Plaintiffs' discovery requests, the Court will focus on the rules applicable to those transgressions.

Federal Rule of Civil Procedure 26(g) requires that discovery responses and objections be signed by the attorney for a party, which constitutes a certification that the discovery response or objection is consistent with the federal rules and is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED. R. CIV. P. 26(g)(2). The rule further provides that

[i]f without substantial justification a certification is made in violation of the rule, the court ... shall impose upon the person who made the certification, the party on whose behalf the ... response or objection is made, or both, an appropriate sanction, which may include an order to pay the

---

4.  The magistrate judge modified the scope of two of Plaintiffs' requests for production; except for

that slight modification, Plaintiffs' motion was granted in its entirety.

amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

FED. R. CIV. P. 26(g)(3).

Federal Rule of Civil Procedure 37(b) provides that if a party "fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just," including "[a]n order striking out pleadings or parts thereof ... or rendering a judgment by default against the disobedient party." FED. R. CIV. P. 37(b)(2)(C). That rule further provides that

> the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

*Id.*

■ The Court's authority to issue sanctions also stems from its "inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir.1995) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The Court's inherent power authorizes litigation-ending sanctions in instances of bad faith or willful abuse of the judicial process. *Id.*

■ Litigation-ending sanctions are, by their very nature, the last resort. *See FDIC v. Conner,* 20 F.3d 1376, 1380 (5th Cir.1994). Nevertheless, in certain circumstances, they are justified "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In determining whether to assess litigation-ending sanctions, a court should consider (1)

whether the misconduct resulted from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) whether the misconduct is attributable to the client instead of the attorney, (3) whether the opposing party is substantially prejudiced by the misconduct; and (4) whether a less drastic sanction would substantially achieve the desired deterrent. *See Conner,* 20 F.3d at 1380–81.

### III. Analysis

■ After review of the record in this cause, the Court concludes that litigation-ending sanctions are the only effective remedy for Horizon's discovery abuses. Horizon claims that it has been forthcoming and has acted in good faith during the discovery process, but review of the entire record belies this contention. As demonstrated in Plaintiffs' Appendix in support of their Second Motion for Sanctions, Horizon has consistently attempted to thwart Plaintiffs' efforts to obtain discovery at almost every turn. *See* Pls.' July 12, 2000 App. at 1–29. Horizon has repeatedly waited until the last possible moment to respond to discovery requests and then has served numerous objections to the requests and/or filed motions seeking protection from the Court, almost the entirety of which have been overruled or denied. Plaintiffs have often been forced to seek court intervention to obtain responses to their discovery requests, and even court orders compelling discovery from Horizon have been met with sluggishness on Horizon's part.

Most indicative of Horizon's bad faith during the discovery process, however, is the fact that despite its repeated assurances that it either had no documents responsive to Plaintiffs' above-referenced discovery requests or had already produced all responsive documents, Horizon has now disclosed, months after the original discovery period ended, that it has over "15,000 plus boxes" of documents that have not been indexed, labeled, or reviewed by its counsel.[5] Horizon

---

5. Horizon's filings do not specifically admit that the documents are not indexed or labeled, although it is apparent from Horizon's motions that its counsel has just begun the task of reviewing the documents. *See* Def.'s June 29, 2000

Mot. to Quash and for Protection at 3. Nevertheless, Plaintiffs have presented evidence demonstrating that Horizon's counsel admitted as much to Plaintiffs' counsel in their June 22 meeting,

provides no explanation for its failure to thoroughly review these boxes for possible responsive documents long ago.

Instead, Horizon merely asserts, without any supporting evidence, that review of these documents only became necessary as a result of Plaintiffs' request for production of documents served with its May 26 deposition notice. Horizon contends that Plaintiffs' May 26 request "was greatly augmented and expanded to include documents pertaining to Horizon's entire corporate operation." (Def.'s Aug. 2, 2000 Resp. to Pls.' Mot. for Sanctions at 6.) Horizon overlooks the discovery requests enumerated above, however, which clearly sought certain "Horizon Corporate Documents." (Pls.' May 13, 1999 Mot. to Overrule Objections, Ex. A at 5.) Horizon has wholly failed to demonstrate that documents responsive to Plaintiffs' prior discovery requests are *not* likely to be contained in the "15,000 plus boxes" of documents; indeed, to the contrary, it *admits* that documents responsive to at least one of Plaintiffs' earlier requests for discovery might be found within these boxes.[6] When considered in light of Horizon's dilatory and obstructive conduct throughout discovery in this case, Horizon's failure to review these boxes of documents before it responded to Plaintiffs' discovery requests to determine whether the boxes contain documents responsive to those requests was not substantially justified and can only be considered to have been designed to cause unnecessary delay and increase the cost of litigation by secreting potentially relevant and damning documents from Plaintiffs, thus forcing them to attempt to obtain evidence in support of their claims through other means. Horizon's continued failure to thoroughly review those boxes even *after* the magistrate judge compelled Horizon to provide full and complete responses to Plaintiffs' requests for certain of Horizon's records is egregious.

Furthermore, Horizon's obstreperous conduct during discovery appears to be attributable to Horizon, rather than to its attorneys. Initially, the Court notes that the sanctions previously imposed by the magistrate judge were imposed solely against Horizon and not against its counsel, despite the fact that, as noted in the order filed in this cause on June 7, 2000, this Court routinely assesses discovery sanctions against counsel, rather than litigants. Additionally, one of Horizon's designated corporate representatives, Randall Mink, recently testified that Horizon has had access to the "15,000 plus boxes" of documents since 1997. *See* Pls.' June 12, 2000 App. at 34. Despite this lengthy period of access, Horizon has apparently just recently commenced its review of those documents.[7] The Court has no reason to believe that this delayed review was the result of advice from Horizon's counsel. Indeed, throughout the initial discovery period in this cause and until shortly after the issuance of the June 7 order, Horizon was represented by counsel the Court knows to be competent, ethical, and unlikely to knowingly participate in the failure to review thousands of potentially discoverable documents. As a result, the Court concludes that Horizon is responsible for its misconduct.

The Court also concludes that Plaintiffs have been severely prejudiced by Horizon's dilatory and evasive discovery tactics in general and, more particularly, by its failure to conduct a timely review of the "15,000 plus boxes" of documents. The Court has already been forced to reopen discovery once as a

and Horizon has wholly failed to argue, much less present evidence, to the contrary.

6. "In December of 1999 Plaintiffs filed their deposition notice that, depending on one's interpretation, may have requested documents contained in the more than 15,000 boxes." (Def.'s Aug. 2, 2000 Reply to Pls.' Resp. to Def.'s Mot. to Quash at 5.)

7. Mink also testified that Horizon maintained an inventory of the "15,000 plus boxes" of documents. *See* Pls.' July 12, 2000 App. at 34. The Court questions the accuracy of this testimony, however, in light of the admission of Horizon's counsel at the June 22 meeting with Plaintiffs' counsel that the documents were neither labeled nor indexed, and because Horizon has failed to produce a complete inventory of these "15,000 plus boxes" of documents in response to Plaintiffs' Second Motion for Sanctions. Indeed, rather than producing such an inventory, Horizon has instead relied on the need to conduct a review of these documents as a basis for seeking a postponement of its deposition under the May 26 notice and an extension of time to respond to the request for production of documents served with that notice.

direct result of Horizon's dilatory production, which production occurred five days before the close of the original discovery period, of documents for which production had been sought by Plaintiff *and* compelled by the Court months earlier. Furthermore, this case was originally filed in 1998 and the trial has already been scheduled, with the agreement of counsel, for February 2001—only three months away. Plaintiffs have prepared their final pleadings, designated expert witnesses, engaged in months of discovery, and agreed to a pretrial order without the benefit of any portion of the "15,000 plus boxes" of documents that Horizon has just recently revealed exist, despite the fact that Horizon has had access to those documents for years. Permitting Horizon to review those documents and supplement its discovery responses at this late date is certain to impose significant additional hardships on both Plaintiff and the Court, inasmuch as it is almost certain to prompt the filing of additional motions and require the appointment of a special master or receiver to oversee the conduct of any remaining discovery. Furthermore, allowing Horizon to conduct this review and supplementation at this late date will almost certainly force a continuance of the trial date, inasmuch as the Court agrees with Plaintiffs' assessment that Horizon's estimation of the time required to undertake a good-faith review of these voluminous documents is extremely understated.

Finally, the Court concludes that a less severe sanction simply would not be sufficient. Significant monetary sanctions have already been imposed against Horizon for its conduct during discovery, and they have obviously been unsuccessful in deterring Horizon's misconduct. Furthermore, anything less than striking Horizon's pleading will likely require both Plaintiffs and the Court to expend countless hours determining whether Horizon has produced all discoverable documents. And, the Court is mindful of the fact that *it is not concerned with just a few*

unrevealed and unreviewed documents, but rather a multitude of them. Where, as here, a party simply fails to review until the eleventh hour thousands of documents that might be responsive to outstanding discovery requests and orders granting motions to compel, despite the fact that significant monetary sanctions have already been imposed against that party for its previous misconduct during discovery, the Court concludes that litigation-ending sanctions are the only effective remedy.

It is, therefore, ORDERED that Plaintiffs' Second Motion for Sanctions [document number 125–1] is hereby GRANTED. Judgment will be entered against Horizon regarding its liability for actual and punitive damages on the remainder of Plaintiffs' claims. A jury trial will be held, as scheduled, in February 2001 regarding the amount of Plaintiffs' damages.[8] At the trial, Horizon will be permitted to cross-examine Plaintiffs' witnesses, but it will not be allowed to present any witnesses or documentary evidence. The parties trial-time allocations are hereby REDUCED to twelve (12) hours for Plaintiffs. and six (6) hours for Horizon.[9]

It is further ORDERED that Horizon shall pay the attorneys' fees and expenses incurred by Plaintiffs in preparing and filing their Second Motion for Sanctions, their reply to Horizon's response to that motion, and their related appendices. No later November 13, Plaintiffs' counsel shall file an affidavit, with supporting time sheets attached, detailing the exact amount of those expenses and fees. Horizon's objections, if any, to the amount requested in that affidavit shall be filed no later than November 27.

It is further ORDERED that Horizon's Motion for Extension to Respond to Plaintiffs' Request for Production of Documents and for Extension of the Deadline for Discovery [document numbers 119–1 and 119–2] is hereby DENIED.

---

8. Unfortunately, Plaintiffs' suggestion to accelerate the trial date as to the damages issue must be denied, inasmuch as the Court's trial calendar through the first of next year is already completely full.

9. All other aspects of the May 2, 2000 Final Scheduling Order, including the requirement that the parties participate in mediation in accordance with the separate order issued that same day, shall remain in full force and effect.

It is further ORDERED that Horizon's Motion to Quash Deposition Notice of Corporate Representative and for Protection [document numbers 122–1 and 122–2] is hereby DENIED.

It is further ORDERED that Plaintiffs' Motion to Overrule Horizon's Objections to Deposition Notice of Corporate Representative of Horizon [document number 127–1] is hereby RENDERED MOOT.

It is further ORDERED that Horizon's Motion for Oral Argument [document number 137–1] is hereby DENIED.