**Murphy PHILLIPS, Individually, as Executor of the Estate of Ford Fullingim, and as Trustee of the Ford and Myrtle Fullingim Trust, et al.**

v.

**FIRST NATIONAL BANK OF WEATHERFORD, et al.**

No. 401CV1015Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Sept. 10, 2002.

Timothy W. Sorenson, Law Office of Timothy W. Sorenson, Dallas, for Plaintiffs.

John Ethan Westhoff, Borden Hand & Westhoff, Weatherford, for First National Bank of Weatherford.

Mark L. Nastri, Munsch Hardt Kopf & Harr, Dallas, for Provident Energy Associates of Montana, LLC, Prism Corporation, and Gary Little.

Charles Leland Bradford, Denbow Wade Bradford & McClure, Weatherford, for C.E. Justice.

*ORDER IMPOSING SANCTIONS ON PLAINTIFFS' COUNSEL FOR MISCONDUCT BEFORE THIS COURT AND GRANTING, IN PART, DEFENDANTS' MOTION FOR RULE 11 SANCTIONS (With Special Instructions to the Clerk)*

MEANS, District Judge.

Plaintiffs and their counsel[1] are before the Court for alleged misconduct both toward this Court and Defendants. This Court's displeasure with Plaintiffs and/or their counsel is set forth in its Order to Show Cause of June 25, 2002. Defendants set out their allegations of misconduct, made pursuant to Rule 11 of the Federal Rules of Civil Procedure, in an instrument entitled "Defendants' Motion for Rule 11 Sanctions." After careful consideration of the conduct of Plaintiffs and their counsel, Defendants' Rule 11 Motion, the response and other pleadings filed by both parties, the applicable law, and, having heard the arguments of counsel at two hearings, the Court, for the reasons that follow, concludes that sanctions should be imposed on Plaintiffs' counsel for their misconduct before this Court. The Court further concludes that Defendants' Rule 11 Motion should be granted in part and denied in part.

## I. Background

### A. The Fraudulent Joinder of Defendant Justice

On April 10, 2001, Plaintiffs filed this suit in state court in Parker County, Texas. Defendants subsequently removed this case to federal court in the Northern District of Texas ("the First Removal"), United States District Judge John McBryde presiding, to which Plaintiffs filed a motion to remand. Defendants alleged diversity of citizenship as the basis for the First Removal, contending that, with the exception of defendant C.E. Justice, the one Texas resident defendant, complete diversity existed and the requisite amount was in controversy. With respect to Justice, Defendants argued that because he had not been served, he was not a party for jurisdictional purposes. The court disagreed, finding that whether Justice had been served had no bearing on the propriety of removal.[2] Accordingly, the Court granted Plaintiffs' motion to remand in the First Removal and further awarded Plaintiffs attorneys' fees in the amount of $5,616 plus post-judgment interest.

On December 19, 2001, Defendants removed this action a second time ("the Second Removal"), to which Plaintiffs filed another motion to remand. Upon first reading, Plaintiffs' motion to remand was persuasive. Not surprisingly, they urged that Defendants had merely "resurrect[ed] their failed arguments regarding diversity" from their First Removal. They also urged that Defendants had waived the right to remove. As they did in the First Removal, Plaintiffs sought their attorneys'

---

1. Plaintiffs' counsel are Gary Lee Hach and Timothy W. Sorenson of Sorenson & Hach in Dallas, Texas. Hach's State Bar Number is 08667020. Sorenson's State Bar Number is 18848400.

2. There were other alleged deficiencies in the First Removal not present in the Second Removal.

fees and costs incurred in connection with the Second Removal.

In contrast to Plaintiffs' motion to remand, Defendants' Response to Plaintiffs' Motion to Remand ("Defendants' Response") was surprising indeed. It showed fraudulent joinder by Plaintiffs to a degree not seen before by this Court. Specifically, in addition to competent argument and authorities, Defendants attached to their response a letter, dated May 22, 2001, from Plaintiffs' counsel to counsel for defendant Justice, in which Plaintiffs unabashedly write:

> Plaintiffs have named C.E. Justice as a defendant in the referenced matter. My clients, who are the Plaintiffs, hold no animosity toward Mr. Justice. He was named to defeat a diversity removal of their claims ... I reiterate ... that we only need Mr. Justice to file an answer, perhaps give a short deposition, and nothing else. We intend to dismiss Mr. Justice from the case either on the eve of trial or one year and a day after he answers,[3] whichever is earlier, and, by this letter, commit to do so if he will file an answer without removing the matter to Bankruptcy Court ... The Plaintiffs agree to pay Mr. Justice's reasonable attorneys fees in this case and enclose herewith a check in the amount of $1,500 payable to you for deposit in trust as a retainer to that end.

(Exhibit B to Defendants' Response.) Plaintiffs filed no reply and thereby effectively conceded Defendants' allegations of fraudulent joinder.

### B. The Show–Cause Order

On June 25, 2002, this Court entered an order denying Plaintiffs' motion to remand and further ordering Plaintiffs and their counsel to show cause as to why sanctions should not be entered against them by this Court ("the Show–Cause Order"). A hearing was scheduled for July 10, 2002. Plaintiffs were provided the opportunity to file a written response to the Show–Cause Order, and Defendants, in turn, provided the opportunity to request sanctions by written motion. Plaintiffs subsequently filed their Response to Notice to Show Cause on July 2, 2002 ("Response to Show–Cause Order"), and Defendants filed their Rule 11 Motion on July 5, 2002. Plaintiffs filed a Response to Defendants' Rule 11 Motion on July 10, 2002.

### C. The Show–Cause Hearing

On July 10, 2002, the show-cause hearing proceeded as scheduled. Only one of Plaintiffs' two attorneys of record, Timothy Sorenson, appeared. Gary Hach, Plaintiffs' other attorney of record and, notably, the author of the May 22, 2001, letter, did not appear. Both in their Response to Show–Cause Order and at the hearing, Sorenson, on behalf of Plaintiffs' counsel, admitted the fraudulent joinder of Justice and the terms of the agreement with Justice as memorialized in the May 22, 2001, letter. Sorenson further admitted that Plaintiffs' counsel had neglected their duty of candor and good faith to this Court, but urged that counsel, and not Plaintiffs, were responsible for the misconduct.

Sorenson's only explanation for the misconduct was that he (and presumably Hach as well) did not understand that the fraudulent joinder of Justice was improper until after receiving the Show–Cause Order and

---

**3.** Not coincidentally, a case is not removable on diversity grounds more than one year after its commencement. *See* 28 U.S.C. § 1446(b) (2001). Defendants' second removal in this case was nonetheless within one year of its commencement and hence timely. Specifically, Defendants removed this case for a second time on December 19, 2001, well within one year of its commencement. Defendants learned of Justice's fraudulent joinder at his deposition on December 4, 2001, at which time Defendants unearthed the letter.

discussing it with another lawyer. Rather, he claims to have viewed the May 22, 2001, letter as "duty to disclose versus a duty to discover" issue. Specifically, he contends that the May 22, 2001, letter was always discoverable by Defendants and, thus, he believed he had fulfilled all ethical obligations. Stated differently, he urged that it was up to Defendants to "discover" the letter, clearly suggesting fault on their part in not discovering it sooner. Sorenson offered this justification at the show-cause hearing during both his argument as counsel and his testimony as a witness under oath in his and his clients' defense. This assertion was also made in the Response to Show–Cause Order, filed with the Court on July 2, 2002.[4]

With respect to sanctions, Sorenson readily conceded this Court's authority to impose sanctions on Plaintiffs and/or Plaintiffs' counsel. With respect to Defendants' Rule 11 Motion, however, in which Defendants' request approximately $50,000 in attorneys' fees and a dismissal of this suit with prejudice, Sorenson claimed that he had not had adequate time to respond. He further argued that Defendants had failed, as required, to serve Plaintiffs with the Rule 11 Motion twenty-one (21) days before filing it, thereby denying Plaintiffs the opportunity to cure any misconduct.[5]

In light of the severity of sanctions requested by Defendants and in order to provide Defendants with an opportunity to submit further briefing regarding the Court's authority, under Rule 11 or otherwise, to award the requested sanctions, the Court granted Plaintiffs additional time to respond Defendants' Rule 11 Motion and Defendants additional time to supplement

their briefing. The hearing on Defendants' Rule 11 Motion was continued.

On July 18, 2002, Defendants did supplement their briefing regarding the Court's authority to sanction Plaintiffs and their counsel, citing numerous cases well establishing this Court's inherent authority, independent of Rule 11, to enter the sanctions they had requested. On July 26, 2002, Plaintiffs filed an Amended Response to Defendants' Request For Sanctions and Motion to Vacate Under Rule 60(b)(6), in which Plaintiffs concede the Court's inherent authority to enter the requested sanctions.

### D. The Rule 11 Hearing

On August 23, 2002, the Court held the hearing on Defendants' Rule 11 Motion. At the hearing, Defendants called witnesses, including Justice; Keith Phillips, who is president of one of the corporate plaintiffs and a representative of the other plaintiffs; and Charles Bradford, who is Justice's attorney. Plaintiffs called no witnesses, but asked that the Sorenson's testimony from the show-cause hearing be incorporated as evidence at this hearing, which request was granted. Hach, Plaintiffs' other attorney, was present but did not speak at the hearing.

Justice too confirmed the agreement memorialized in the May 22, 2001, letter and further testified that the agreement had never been rescinded. He further testified that he did not know who was paying his attorneys' fees. He stated that he was still a defendant to this suit. Phillips testified that Plaintiffs were unaware of the fraudulent joinder of Justice.

---

**4.** *See* Response to Show–Cause Order at 2.

**5.** Rule 11 provides in pertinent part: "A motion for sanctions under this Rule ... shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless,

within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *See* Fed.R.Civ.P. 11(c)(1)(A).

Bradford's testimony proved the most interesting. He revealed that, directly contrary to Sorenson's and his firm's written and oral representations to this Court during the course of these very proceedings, the May 22, 2001, letter was not at all times readily discoverable by Defendants. To the contrary, when Defendants requested the letter at Justice's deposition (once its existence was made known), Bradford *and* Sorenson objected on the basis of attorney-client privilege. It was not produced until after the state court ruled that there was no privilege. Notably, Sorenson, in whole or in large part—not Justices's attorney, Bradford—presented and argued to the state court the objection based on attorney-client privilege.[6]

At the conclusion of the hearing, Sorenson again admitted that he deserved some sort of sanction, now having seen the error of his prior actions. While conceding the inherent power of the Court to enter the sanctions requested by the Defendants, he urged that any sanctions be limited, because there had been no showing of bad faith on his part. He again stated that, in the event that sanctions were entered, such sanctions should be imposed on Plaintiffs' counsel, not Plaintiffs, due their lack of knowledge and/or understanding of the offending conduct. Finally, he disputed the amount of attorneys' fees sought by Defendants, contending that numerous time entries had been included for work that would have been performed independently of the fraudulent joinder of Justice. Defendants, in turn, asserted that they had demonstrated bad faith on the part of Plaintiffs' counsel and had also shown the direct involvement of Plaintiffs in the misconduct. As such, Defendants continue to seek their attorneys' fees in the full amount requested and the dismissal of this suit with prejudice.

## III. Authority To Sanction

 This Court has the inherent power, *inter alia*, to manage its own docket, to sanction for bad-faith conduct or fraud, and order a litigant and/or a litigant's counsel to pay the attorneys' fees and expenses incurred by the opposing party and dismiss the case with prejudice. *See Chambers v. NASCO*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This Court's inherent power to sanction for bad-faith conduct is not displaced by rule or statute. *Id.* at 46, 111 S.Ct. 2123. Neither party disputes the scope of this Court's inherent power and, at any rate, it is the law. Contrary to the assertions of Plaintiffs' counsel, this Court, as set forth below, does find bad-faith litigation misconduct and outright fraud on their part. In imposing the sanctions this Court finds reasonable under the circumstances of this case, the Court has relied on its inherent power.[7]

---

**6.** It strains reason that a letter between a plaintiff's lawyer and a defendant's lawyer could ever be attorney-client privileged. For Plaintiffs' lawyer to assert and argue that objection for Justice, his alleged opponent, is equally startling.

**7.** The Court concludes that the misconduct in this case cannot be fully and adequately remedied under Rule 11, because no opportunity to cure the offending conduct was or can now be provided as required. *See* Fed.R.Civ.P. 11(c)(1)(A). The Court has already ruled on and denied Plaintiff' second motion to re-mand, and Plaintiffs therefore cannot now withdraw that motion, assuming, without deciding, that withdrawal of that motion would have cured the misconduct at issue. Accordingly, the Court relies on its inherent power to enter the appropriate sanctions. *See Chambers*, 501 U.S. at 50, 111 S.Ct. 2123 ("[W]hen there is bad-faith conduct in the course of the litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules ... But if in the informed discretion of the court, ... the Rules are [not] up to the task, it may safely rely on its inherent power.")

## IV. *Findings*

 After careful review of all the pleadings filed by the parties regarding the fraudulent joinder of Justice and the applicable law, and having heard the arguments of counsel and testimony of witnesses at two hearings, the Court concludes that sanctions are warranted against Plaintiffs' counsel, Sorenson and Hach.[8]

While typically the fraudulent joinder of a defendant merely results in the non-inclusion of the fraudulently joined defendant in the diversity analysis, the Court concludes that this is not the typical case. As evidenced by the May 22, 2001, letter, Plaintiffs' counsel sued Justice for the sole purpose of destroying Defendants' right to remove. They promised to dismiss him once the deadline to remove was safely behind them and even agreed to pay his defense costs. They concede no liability on his part.[9] Thus, this is not an instance where the attorney believed in good faith, albeit incorrectly, that there was some reasonable, legal basis for joining an in-state defendant in the suit.[10]

Having entered into this agreement with Justice, Plaintiffs subsequently filed two motions for remand, requesting, with great bravado, their attorneys' fees in both.[11] Indeed, with unmitigated gall, Plaintiffs' counsel filed a motion to remand in the Second Removal, knowing that their fraudulent joinder of Justice and the May 22, 2001, letter would be squarely before the Court. In short, both motions to remand were filed in bad faith. Plaintiffs' counsel have at least twice committed a fraud on Defendants and on the district court of the Northern District of Texas.

Further, Sorenson's assertion that he failed to understand that his conduct was unethical or otherwise a breach of his duties of good faith and candor is not credible in the least. Again, Sorenson claims to have viewed the issue as one of a "duty to disclose versus a duty to discover." The facts, however, prove this to be untrue. While Sorenson states that the May 22, 2001, letter was always available to Defendants if they only asked for it, he and Justice's attorney did not produce the letter until ordered to do so by the state

---

8. Due to their claimed lack of knowledge of the fraudulent joinder of Justice, however suspect this testimony may be, the Court is not inclined at this time to sanction Plaintiffs directly. As set forth below, however, if the monetary sanctions imposed on their counsel by this Order are not timely paid, this lawsuit will be dismissed with prejudice. To the extent that is a sanction directed to Plaintiffs, it is warranted. A party is bound by the wrongful acts of his attorney. *See Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1418 (5th Cir.1995) (if attorney's conduct is unreasonable, client's remedy is against attorney in suit for malpractice ... keeping this suit alive merely because it was the attorney's misconduct and not the plaintiff's, would be visiting the sins of plaintiff's lawyers upon the defendants) (citation omitted).

9. Aside from the fact that the letter itself constitutes a waiver by Plaintiffs of any claims against Justice, Plaintiffs' counsel concedes that Plaintiffs had no viable claim against Justice. Any possible claims Plaintiffs may have had against Justice had already been discharged in a prior bankruptcy filed by Justice. Plaintiffs' counsel were aware of this fact when they joined Justice as a defendant to this suit. (*See* Response to Show–Cause Order at 2).

10. Because the usual fraudulent joinder case involves that situation, the term "fraudulent joinder" does not typically mean "fraud" in the negative sense of that term. *See, e.g., Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 675 n. 3 (E.D.Tex.1999) (citation omitted). It does here.

11. While the Court finds both motions to remand to have been filed in bad faith for the reasons stated, the Court also finds any request for attorneys' fees to have been made in bad faith. Again, Judge McBryde awarded Plaintiffs $5,616 in attorneys' fees plus post-judgment interest in the First Removal.

court after it overruled their bogus attorney-client-privilege objection. By testifying and stating in pleadings filed with this Court that the letter was never "hidden" and always discoverable, Sorenson has, at a minimum, attempted to mislead this Court. He may well have again committed outright fraud during the course of these proceedings on his *prior* misconduct. Sorenson's continued lack of candor with this Court renders any explanation for his prior misconduct highly suspect.[12]

Moreover, the "duty to disclose versus duty to discover" explanation is flawed and nonsensical. Even after the letter was discovered, over objection, Sorenson still moved to remand a second time. The Court is thus at a loss as to what ethical obligations Sorenson could be said to have been fulfilling to Defendants by making the May 22, 2001, letter discoverable. Further, this explanation does not remedy the fraud committed by Plaintiffs' counsel on the district court of the Northern District of Texas by filing in bad faith two motions to remand despite knowledge of the fraudulent joinder of Justice. The Court thus concludes that Plaintiffs' counsel, Sorenson and Hach, are deserving of both monetary and non-monetary sanctions as well as this Court's stern disapprobation.

## V. Sanctions

For the reasons stated above, the Court ORDERS the following sanctions against Plaintiffs' counsel, Sorenson and Hach:

1. Sorenson and Hach are both ORDERED to reimburse Defendants for $23,225.59[13] in attorneys' fees and costs unnecessarily incurred as a result of their litigation misconduct, bad faith, and fraud. If this amount is not paid in full by 5:00 p.m., September 12, 2002, Defendants are to promptly notify this Court, at which time this case will be immediately dismissed with prejudice.

2. Sorenson and Hach are both FURTHER ORDERED to forward a copy of this Order to the Grievance Committee of the State Bar of Texas by no later than September 12, 2002, and to copy the Court on such correspondence. Further, by 4:30 p.m., October 1, 2002, Sorenson and Hach are to provide this Court with an

---

12. While portions of this Order mention only Sorenson and not Hach, only Sorenson has testified and articulated the defense of Plaintiffs and their counsel to the imposition of sanctions. All sanctions entered by the Court in this Order and its disapprobation are equally directed to Hach as counsel of record for Plaintiffs. Further, Hach could have offered his own explanation for his and his partner's misconduct but he chose not to attend the show-cause hearing and to remain silent at the Rule 11 hearing.

13. This amount is less than what Defendants requested. The Court carefully scrutinized Defendants' fee statements and concluded that several time entries did not appear to be directly tied to the misconduct of Plaintiffs' counsel. These entries were therefore excluded. (*See, e.g.,* App. to Defendants' Motion for Rule 11 Sanctions at 97, 99, 100, and various entries dated 11/15/01, 11/21/01, 11/28/01, 11/29/01 (except for last entry), 11/30/01, last entry on 12/4/01, 12/5/01, 1/4/02, 1/7/02, and last entry on 1/8/02). Further, the Court concludes that Defendants likely would have deposed Justice regardless of his fraudulent joinder, because Defendants did not discover the May 22, 2001, letter and hence the fraudulent joinder of Justice until the day of the deposition. Consequently, there was likely another reason for noticing his deposition, perhaps related to fact issues in the case. The Court is therefore only awarding half the fees incurred in connection with Justice's deposition and other discovery matters involving him. The Court is also awarding only half of the computer-research fees, because it is difficult to decipher what issues were researched.

acknowledgment of receipt of this Order by the Grievance Committee.

3. At the request of both parties, and again pursuant to the Court's inherent power, Defendants' obligation to pay attorneys' fees, costs, and post-judgment interest on account of the "Final Judgment As To Costs" in Cause No. 4:01–CV–0582–A [document number 16] is hereby CANCELED.

## VI. Conclusion

Plaintiffs' counsel have acted in bad faith in this litigation by filing pleadings without a good-faith basis and by committing fraud on the district court of the Northern District of Texas. They have continued to mislead this Court in the very proceedings addressing their misconduct. Consequently, under the Court's inherent power, the Court has ordered the above sanctions against Plaintiffs' counsel, Sorenson and Hach, and sternly reprimands them for their misconduct. Defendants' Motion for Rule 11 Sanctions [document number 22] is therefore GRANTED IN PART. Specifically, Defendants are awarded their attorneys fees, as modified, but their request for dismissal of this suit with prejudice is DENIED. Should Plaintiffs' counsel fail to comply with this Order, however, this case will be dismissed with prejudice.

Also pending before the Court is Defendants' Motion to Transfer Venue [documents numbers 3 and 35]. Plaintiffs have withdrawn their opposition to this motion and now agree to transfer. *(See* Plaintiffs' Amended Response With Authorities to Defendants' Motion to Transfer Venue, filed on August 1, 2002.) Given that the parties now jointly request transfer, the Court will likely grant it. In order to avoid any question as to this Court's juris-

diction to dismiss Plaintiffs' suit with prejudice in the event of noncompliance with this Order, Defendants' Motion to Transfer Venue [documents numbers 3 and 35] is TAKEN UNDER ADVISEMENT AND ADMINISTRATIVELY TERMINATED.[14]

---

**14.** If Plaintiffs do comply with this Order, Defendants' Motion to Transfer Venue will be administratively reinstated by order of this Court. In the event such an order is not forthcoming, the parties are encouraged to contact the Court.